## COMMISSIONER OF INTERNAL REVENUE v. PHILADELPHIA TRANSP. CO.

### No. 9772.

United States Court of Appeals
Third Circuit.

Argued Feb. 23, 1949.

Decided March 21, 1949.

WALLER, Circuit Judge, dissenting.

———◆———

Morton K. Rothschild, of Washington, D.C. (Theron Lamar Caudle, Asst. Atty. Gen. and Ellis N. Slack, Sp.Asst. to Atty. Gen., on the brief), for petitioner.

William R. Spofford, of Philadelphia, Pa. (Frederic L. Ballard, Sherwin T. Mc-Dowell, and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, Pa., on the brief), for respondent.

Before GOODRICH, WALLER and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

The Philadelphia Transportation Co., the taxpayer here, was formed on January 1, 1940 as the culmination of reorganization proceedings involving 65 corporations concerned in Philadelphia's public transportation system. In accordance with the reorganization plan, the taxpayer issued, in January, 1940, mortgage bonds dated January 1, 1939 and bearing interest from that date. The interest coupons for 1939 and 1940 were redeemed by the taxpayer in 1940, as required by the reorganization plan.

The taxpayer computes its tax liability on an accrual basis. In its income tax return for 1940, it claimed a deduction for the 1939 and 1940 coupons as "interest accrued" in 1940.[1]

These basic facts raise the crucial question, the answer to which will dispose of the case. Was the interest allocated as 1939 interest properly deducted from the taxpayer's 1940 income as interest accrued in 1940? The Tax Court held that it was. In this appeal, the Commissioner seeks reversal on three principal grounds. He argues, first, that the amount deducted was not interest. It was not interest, he says, because interest is compensation for the use of money, and the taxpayer held no money, borrowed or otherwise, in 1939. The Commissioner looks for support on this point to the statutory language which refers to "interest accrued on indebtedness." He concludes that without indebtedness in 1939, there could have been no interest. And there was no indebtedness in 1939, he says, because the taxpayer had no corporate existence then.

The Commissioner's second point is that the taxpayer really took over the obligation to pay 1939 interest as a part of the

---

[1] The applicable section of the Internal Revenue Code, § 23(b), provides:
"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions: * * *
(b) Interest. All interest paid or accrued within the taxable year on indebtedness * * *." 26 U.S.C.A. § 23(b).

cost of the assets acquired in the reorganization. We discuss this point below. And finally the Commissioner argues that even if the amount in question be treated as interest, a deduction of interest for more than the current year may not be made from that year's income.

The point last stated is easily answered. No provision of the Internal Revenue Code prohibits such a deduction. Section 43 of the Code, 26 U.S.C.A. § 43, provides that the liabilities of one year cannot be used to reduce the income of a subsequent year. It is upon this provision that the Commissioner relies. But the issue is whether the item in question here is a liability of the year 1940. If it accrued in 1940, it is deductible in 1940 and in no other year, whether or not it is based on transactions allocated for other purposes to other periods. One decision specifically supports the deduction of 2 years' interest in one year in a proper case,[2] and three other decisions, incuding one from this Court, support the proposition in principle.[3]

We turn, then, to the Commissioner's first two arguments. We think that the fog surrounding the no debt-no interest contention is best cleared by a simple hypothetical illustration. A corporation is formed in 1940. It is brand new and without corporate forebears. It issues in 1940 a series of 20-year coupon bonds. For reasons best known to the management, it is decided to date the bonds as of January 1, 1939 to mature January 1, 1959, and to redeem the first two interest coupons in 1940. The corporation pays its taxes on an accrual basis. Can there be any doubt that the interest accrued on the two coupons in 1940 and was properly deductible in that year? We think that in the hypothetical case the situation is the same as if the 1940 interest coupons were just double the later ones in amount. There was indebtedness in 1940, interest accrued on that indebtedness in 1940, and we think it is chargeable for tax purposes, as well as bookkeeping purposes, for that year.

We think the present case is similar to the hypothetical one in all respects except that the taxpayer was the product of a reorganization and came into existence with the obligation to pay fixed and variable interest on the bonds it was to issue to the shareholders of its corporate predecessors. These added factors do not, in our judgment, alter the result. The taxpayer, as a new corporation, created its own new indebtedness. It did not assume existing liabilities on which interest had already accrued against predecessor companies. If it had, there would be merit in the Commissioner's point that the obligation was part of the cost of the assets acquired by the taxpayer.[4]

But that is not the fact. No obligation was owed by the predecessor companies to their shareholders except insofar as assets might have remained for distribution to them when corporate affairs were wound up. Moreover, neither the present taxpayer nor any of its predecessors was in a position to take advantage of a 1939 deduction for the interest payments in question. As our brethren in the Ninth Circuit

---

[2] Oregon Pulp & Paper Co. v. Commissioner, 1942, 47 B.T.A. 722, petition for review dismissed, C.C.A. 9, November 2, 1943.

[3] Commissioner v. Pressed Steel Car Co., Inc., 3 Cir., 1945, 152 F.2d 280; Ernst Kern Co. v. Commissioner, 1942, 1 T.C. 249; Columbia River Paper Mills v. Commissioner, 1940, 43 B.T.A. 104, affirmed 9 Cir., 1942, 126 F.2d 1009. It is true that our decision was made at a time when the Dobson case blinders prevented the judicial eye from roving over the record. We think the result was right though perforce compelled.

[4] Cases in which the indebtedness was that of the taxpayer's vendor or predecessor, and was taken over by the taxpayer with the obligation to pay interest already accrued, have been properly treated as capital transactions. Commissioner v. Breyer, 3 Cir., 1945, 151 F.2d 267, 272; Rodney Inc., v. Commissioner, 2 Cir., 1944, 145 F.2d 692; Pratt-Mallory Co. v. United States, 1936, 12 F. Supp. 1020, 1023, 82 Ct.Cl. 292. Cases like Lloyd v. Commissioner, 3 Cir., 1946, 154 F.2d 643, in which the proceeds of the sale of unmatured interest coupons by a banking syndicate which was not the obligor were held improperly declared as a deduction for payment of "interest," are clearly without application to the present case.

said in Commissioner v. Columbia River Paper Mills, 1942, 126 F.2d 1009, 1010: "The arrangement was a logical one under the circumstances, * * *. It is not suggested that there was any purpose of tax avoidance * * *." We conclude, therefore, as we did in Pressed Steel Car Co. v. Commissioner, 3 Cir., 1946, 152 F.2d 280, that the Tax Court correctly decided that the amount in dispute represented accrued interest within the meaning of Section 23(b) of the Internal Revenue Code.[5]

The decision of the Tax Court will be affirmed.

### WALLER, Circuit Judge (dissenting):

It is with regret that I cannot bring myself in line with the excellent opinion of the majority in this case. I cannot escape the force of innumerable opinions of courts throughout the country holding that interest is the premium paid for the use of money, or—as held by the Supreme Court in Deputy, Administratrix v. Dupont, 308 U.S. 488, text 497, 60 S.Ct. 363, 368, 84 L.Ed. 416,—that interest "is the amount which one has contracted to pay for the use of borrowed money."

In 1939 the taxpayer here borrowed no money, acquired no property, used no money or property of others, and owed no debts to which interest could have been an incident. On the contrary it was not in existence until January 1, 1940, and neither made, nor could have made, any contract prior to its coming into being. It, doubtless, could have ratified, upon its organization, lawful contracts theretofore made by its promoters, but the procedure adopted was not that of ratifying a prior contract made by its promoters but of making its own contract whereby it sought to engage in the Canutian pastime of turning back the tide for one year and thus to pay interest on money which it never used nor borrowed in 1939, but with which it purchased property in 1940.

The bonds were issued for the acquisition of the assets of the sixty-five affiliated companies. The consideration for the purchase of such assets was the execution and delivery of bonds and interest coupons thus ante-dated. Before its organization no assets were delivered to it, no money advanced, no forbearance extended. In short, bonds with one year's unearned and unaccrued interest coupons were delivered in consideration for the sale of such assets.

It seems clear that the payment represented by the 1939 coupons was not a payment of interest" but was merely a part of the consideration for the acquisition of the assets acquired in part therewith, and as such was a capital investment rather than rent for the use of money or its equivalent.

[5] All the authorities on this point have reached the same result, with one exception. Commissioner v. Pressed Steel Car Co., Inc., 3 Cir., 1945, 152 F.2d 280; Ernst Kern Co. v. Commissioner, 1942, 1 T.C. 249; Columbia River Paper Mills v. Commissioner, 1940, 43 B.T.A. 104, affirmed 9 Cir., 1942, 126 F.2d 1009; Oregon Pulp & Paper Co. v. Commissioner, 1942, 47 B.T.A. 722, petition for review dismissed, C.C.A. 9, November 2, 1943. Contra: Commissioner v. Drovers Journal Publishing Co., 7 Cir., 1943, 135 F.2d 276.